**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| THE LYNN M. KENNIS TRUST U/A DTD 10/02/2002, BY LYNN M. KENNIS AS TRUSTEE, and THE RONALD J. KENNIS TRUST, BY RONALD J. KENNIS AND DOLORES M. KENNIS AS TRUSTEES,<br><br>Plaintiffs,<br><br>v.<br><br>FIRST EAGLE INVESTMENT MANAGEMENT, LLC,<br><br>Defendant. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) C.A. No. 14-585-(SLR/SRF)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

**OPENING BRIEF IN SUPPORT OF DEFENDANT
FIRST EAGLE INVESTMENT MANAGEMENT, LLC'S MOTION TO DISMISS**

Of Counsel:

Lori A. Martin
Brad E. Konstandt
Wilmer Cutler Pickering Hale and Dorr LLP
7 World Trade Center
250 Greenwich Street
New York, NY 10007
(212) 230-8800
Lori.Martin@wilmerhale.com
Brad.Konstandt@wilmerhale.com

Matthew T. Martens
Matthew J. Thome
Wilmer Cutler Pickering Hale and Dorr LLP
1875 Pennsylvania Avenue NW
Washington, DC 20006
(202) 663-6000
Matthew.Martens@wilmerhale.com
Matthew.Thome@wilmerhale.com

Dated: July 14, 2014

Frederick L. Cottrell, III (#2555)
Jason J. Rawnsley (#5379)
Richards, Layton & Finger, P.A.
One Rodney Square
920 N. King Street
Wilmington, DE 19801
(302) 651-7700
cottrell@rlf.com
rawnsley@rlf.com

*Attorneys for Defendant
First Eagle Investment Management, LLC*

# TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES ............................................................................................................ ii

NATURE AND STAGE OF PROCEEDINGS ............................................................................... 1

SUMMARY OF ARGUMENT ...................................................................................................... 1

STATEMENT OF FACTS .............................................................................................................. 4

    A.        The Parties ................................................................................................................ 4

    B.        The Mercer Global Low Volatility Equity Fund ..................................................... 6

    C.        The Claims ................................................................................................................ 7

ARGUMENT ................................................................................................................................... 8

I.        PLAINTIFFS' ALLEGATIONS DO NOT GIVE RISE TO AN
        INFERENCE THAT THE ADVISORY FEES PAID BY THE GLOBAL
        FUND AND OVERSEAS FUND ARE SO DISPROPORTIONATELY
        LARGE THAT THEY BEAR NO REASONABLE RELATIONSHIP
        TO THE SERVICES RENDERED ........................................................................ 8

    A.        Scope of Section 36(b) ............................................................................................ 9

    B.        The Complaint Fails to State a Violation of Section 36(b) Because It
        Includes Insufficient Factual Allegations that the Funds' Advisory Fees
        Are Outside the Range that Arm's-Length Bargaining Would Produce ............... 10

        1.        Plaintiffs' Speculation that the Mercer Fund Has a Disproportionately
            Lower Advisory Fee than the Global Fund Does Not Give Rise to a
            Reasonable Inference of Misconduct ......................................................... 10

        2.        The Complaint Pleads No Facts Showing that the Overseas Fund's
            Fees Were Disproportionately Larger to Any Comparable Advisory
            Client Account ........................................................................................... 13

        3.        The Complaint's Allegations Regarding Economies of Scale Fail to
            Support an Inference that Economies of Scale Have Been Realized............. 15

        4.        The Complaint's Allegations Regarding the Conscientiousness and
            Independence of the Trustees Are Too Conclusory to Support an
            Inference that First Eagle Violated Section 36(b) ......................................... 18

CONCLUSION .............................................................................................................................. 20

i

# TABLE OF AUTHORITIES

**Page(s)**

**FEDERAL CASES**

*Amron v. Morgan Stanley Inv. Advisors Inc.*,
464 F.3d 338 (2d Cir. 2006).................................................................................9, 10, 17, 18

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009)...................................................................................................2, 8, 12

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007).............................................................................................................8

*Fowler v. UPMC Shadyside*,
578 F.3d 203 (3d Cir. 2009)................................................................................................8

*Hamilton v. Allen*,
396 F. Supp. 2d 545 (E.D. Pa. 2005) ................................................................................12

*Hoffman v. UBS-AG*,
591 F. Supp. 2d 522 (S.D.N.Y. 2008).........................................................................12, 17

*In re American Mut. Funds Fee Litig.*,
No. CV 04-5593, 2009 WL 5215755 (C.D. Cal. Dec. 28, 2009) .........................................18

*In re Burlington Coat Factory Sec. Litig.*,
114 F.3d 1410 (3d Cir. 1997)..............................................................................................4

*In re Franklin Mut. Funds Fee Litig.*,
478 F. Supp. 2d 677 (D.N.J. 2007) ..............................................................................10, 18

*In re Goldman Sachs Mut. Funds*,
No. 04 Civ. 2567, 2006 WL 126772 (S.D.N.Y. Jan. 17, 2006) ...........................................17

*In re NAHC, Inc. Sec. Litig.*,
306 F.3d 1314 (3d Cir. 2002)..............................................................................................5

*In re Pharm. Indus. Average Wholesale Price Litig.*,
307 F. Supp. 2d 196 (D. Mass. 2004) ...............................................................................12

*In re Salomon Smith Barney Mut. Fund Fees Litig.*,
528 F. Supp. 2d 332 (S.D.N.Y. 2007)......................................................................16, 17, 19

*In re Scudder Mutual Funds Fee Litig.*,
No. 04 Civ. 1921, 2007 WL 2325862 (S.D.N.Y. Aug. 14, 2007), ........................................16

*Jones v. Harris Assocs. L.P.*,
    559 U.S. 335 (2010) ........................................................................................................9, 11

*Kalish v. Franklin Advisers, Inc.*,
    742 F. Supp. 1222 (S.D.N.Y.1990) ........................................................................................17

*Krantz v. Prudential Inv. Fund Mgmt. LLC*,
    305 F.3d 140 (3d Cir. 2002) ..........................................................................................10, 12

*Krantz v. Prudential Inv. Fund Mgmt. LLC*,
    77 F. Supp. 2d 559 (D.N.J. 1999) ...........................................................................................19

*Krinsk v. Fund Asset Mgmt., Inc.*,
    875 F.2d 404 (2d Cir. 1989) .................................................................................................17

*Migdal v. Rowe Price-Fleming Int'l*,
    248 F.3d 321 (4th Cir. 2001) ........................................................................................10, 19

*Millenco L.P. v. MEVC Advisors, Inc.*,
    No. CIV. 02-142-JJF, 2002 WL 31051604 (D. Del. Aug. 21, 2002) ....................................10

*Mintz v. Baron*,
    No. 05 Civ. 4904, 2009 WL 735140 (S.D.N.Y. Mar. 20, 2009) ........................................4, 17

*Pension Trust Fund for Operating Engineers v. Mortgage Asset Securitization
    Transactions, Inc.*,
    730 F.3d 263 (3d Cir. 2013) ...................................................................................................4

*Philip A. Templeton, M.D., P.A. v. EmCare, Inc.*,
    868 F. Supp. 2d 333 (D. Del. 2012) .........................................................................................4

*West Run Student Housing Assocs., LLC v. Huntington Nat'l Bank*,
    712 F.3d 165 (3d Cir. 2013) ...................................................................................................8

*Yampolsky v. Morgan Stanley Inv. Advisers, Inc.*,
    No. 03 Civ. 5710, 2004 WL 1065533 (S.D.N.Y. May 12, 2004) ..........................................12

**FEDERAL STATUTES**

Section 36(b) of the Investment Company Act of 1940,
15 U.S.C. § 80a-35(b) .............................................................................................................9

**RULES**

Fed. R. Evid. 201(c) ..................................................................................................................5

## NATURE AND STAGE OF PROCEEDINGS

In this action, Plaintiffs, the Lynn M. Kennis Trust U/A DTD 10/02/2002 and the Ronald J. Kennis Trust (the "Plaintiffs"), allege that Defendant First Eagle Investment Management, LLC ("First Eagle") breached its fiduciary duties to the First Eagle Global Fund ("Global Fund") and the First Eagle Overseas Fund ("Overseas Fund") (together, the "Funds") by charging excessive fees for investment advisory services.  Plaintiffs assert that the fees that the Funds paid First Eagle were larger than those paid by other clients and could not have been negotiated at arm's-length, in violation of Section 36(b) of the Investment Company Act of 1940.  In this motion, First Eagle moves to dismiss the Complaint on the grounds that the Complaint fails to plead any facts whatsoever showing that the fees the Funds paid First Eagle were disproportionately larger than fees paid by comparable clients, the essential assertion of Plaintiffs' Section 36(b) claim.

## SUMMARY OF ARGUMENT

Plaintiffs claim that First Eagle breached its fiduciary duty to the Global Fund and the Overseas Fund by charging a disproportionately larger investment management fee to the Funds than it receives from its non-Fund clients.  The remarkable thing about the Complaint, however, is the complete absence of basic factual allegations in support of this claim.  There are no facts regarding whether there is any client that actually receives a more favorable fee than the Funds, much less that the fee charged any such client is "disproportionately" smaller than the Funds' fee.  These, however, are precisely some of the fundamental facts that Plaintiffs must allege to support a finding that the First Eagle Fund fees were disproportionately large relative to comparable clients and relative to the services that First Eagle provided the Funds.  The Complaint, at best, speculates that there is one client, with unspecified fees, that *may* have paid less for advisory services than the Funds paid.  Such speculation is an insufficient basis to plead

a claim, and this action therefore should be summarily dismissed.  *Ashcroft v. Iqbal*, 556 U.S. 662 (2009).  Moreover, with respect to the Overseas Fund, the Complaint should be dismissed for the independent and additional reason that it fails to plead *any* valid comparison for the fees received by First Eagle.

The specific pleading deficiencies are as follows:

1.     The Complaint pleads no facts to support a claim that the Global Fund's advisory fee is "disproportionately large" relative to any comparable client account managed by First Eagle.  Although Plaintiffs claim that First Eagle receives a lower sub-advisory fee for managing a portion of the Mercer Global Low Volatility Equity Fund ("Mercer Fund") than the advisory fee it receives from the Global Fund, Plaintiffs concede that they do not know this to be the case. (Compl. ¶ 63.)  In the absence of any facts that the Global Fund pays disproportionately larger fees for the same service that First Eagle provides to the Mercer Fund, Plaintiffs resort to "information and belief" to plead that the Mercer Fund sub-advisory fees are lower than the Global Fund's advisory fees.  Shockingly, the sole basis for Plaintiffs' conjecture regarding the Mercer Fund sub-advisory fee is the fees that *other* sub-advisers (*i.e.*, not First Eagle) receive for providing sub-advisory services to *other* Mercer funds (*i.e.*, not the Mercer Fund that is the subject of this litigation).

2.     Even more incredible than the speculative pleading regarding the Global Fund, the Complaint pleads *no specific facts* about the Overseas Fund's advisory fee.  Plaintiffs do not allege that the Overseas Fund's fee is excessive in the market, or that First Eagle offers the Overseas mandate to any client on more favorable terms than it provides to the Fund.  They similarly do not allege that the fee is disproportionately large relative to the services that First

2

Eagle provides the Overseas Fund.  Any comparison between the advisory fee for the Overseas Fund and the sub-advisory fee for the Mercer Fund is deficient as a matter of law, as those funds are fundamentally different and have different investment mandates.  Unlike the Mercer Fund, which contains a substantial amount of U.S. investments, the Overseas Fund is a foreign stock fund that invests no more than 20% of its assets in U.S. companies.  Thus, even if Plaintiffs could demonstrate that First Eagle receives a different advisory fee for the Overseas Fund than it receives for sub-advising a portion of the Mercer Fund, Plaintiffs include no allegations supporting an inference that First Eagle's services to two fundamentally different investment products are the same, or that the advisory fee paid by the Overseas Fund could not have been negotiated at arm's-length.

3.     The Complaint's conclusory allegations that First Eagle has not adequately shared the benefits of economies of scale with the Funds are legally insufficient to meet Plaintiffs' obligations to plead a violation of Section 36(b).  Plaintiffs assert that the Global Fund and Overseas Fund have increased in size, without providing breakpoints to investors.  They offer no facts, however, supporting the inference that the Funds have achieved economies of scale, or that First Eagle has not shared the benefits of any economies with investors in the form of additional services.  The Complaint therefore includes insufficient allegations on any of the *Gartenberg* factors to support an inference that the Funds' advisory fees are so disproportionately large that they bear no reasonable relationship to the services that First Eagle provides the Funds.

## STATEMENT OF FACTS

### A.     The Parties

Plaintiff the Lynn M. Kennis Trust U/A DTD 10/02/2002 is a shareholder in the Global Fund.  (Compl. ¶ 15.)[1]  Plaintiff the Ronald J. Kennis Trust is a shareholder in the Overseas Fund.  (Compl. ¶ 16.)

Defendant First Eagle is an investment adviser to the Global Fund and the Overseas Fund.  (Compl. ¶ 23.)  First Eagle manages each Fund's portfolio of securities.  (Compl. ¶ 23.) The Board of Trustees for each Fund, consisting of a majority of independent trustees, approved the investment advisory agreement between First Eagle and each Fund, and also approved First Eagle's compensation for the provision of investment advisory services.  (Compl. ¶¶ 25, 27-28.) First Eagle's investment management fee for managing the Global Fund and the Overseas Fund is 0.75% of the Fund's assets under management.  (Compl. ¶ 40.)

The Global Fund "seeks long-term growth of capital by investing in a range of asset classes from markets in the United States and throughout the world."[2]  The Overseas Fund

---

[1]      On a motion to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, the factual allegations of the Complaint are presumed to be true.  *See, e.g.*, *Philip A. Templeton, M.D., P.A. v. EmCare, Inc.*, 868 F. Supp. 2d 333, 338 (D. Del. 2012).

[2]      *See* First Eagle Funds Prospectus, dated March 1, 2014, at 4.  The prospectus is attached as Exhibit A to the Declaration of Matthew J. Thome, dated July 14, 2014 ("Thome Decl.").  On a motion to dismiss, a court may consider any documents upon which the complaint relies and which are integral to the complaint.  *Pension Trust Fund for Operating Engineers v. Mortgage Asset Securitization Transactions, Inc.*, 730 F.3d 263, 265 n.1 (3d Cir. 2013); *see In re Burlington Coat Factory Sec. Litig*., 114 F.3d 1410, 1426 (3d Cir. 1997).  The Complaint in this action relies on the Funds' prospectuses.  (*See, e.g.*, Compl. ¶¶ 29-33.)  In analogous circumstances, courts have considered public filings in dismissing Section 36(b) actions.  *See Mintz v. Baron*, No. 05 Civ. 4904, 2009 WL 735140, at *3 (S.D.N.Y. Mar. 20, 2009).

"seeks long-term growth of capital by investing primarily in equities issued by non-U.S. corporations."[3]

The Funds have provided exceptional returns for investors.  For example, over the last 10 years, the Global Fund and Overseas Fund produced annual returns for owners of Class I shares of 10.57% and 10.20%, respectively.[4]  Morningstar has listed Class I shares of these Funds as "five star" rated, a coveted recognition of excellence.[5]  First Eagle's fees for providing those

---

[3]     Thome Decl., Ex. A at 11.

[4]     Thome Decl., Ex. A at 10, 17.  The Global Fund and Overseas Fund have also provided superior performance for owners of Class A shares, producing annual returns of 9.73% and 9.36%, respectively, over the last ten years.  *Id.*  On a motion to dismiss, courts are permitted to take judicial notice of facts that are "not subject to reasonable dispute" because they are either (1) "generally known within the trial court's territorial jurisdiction"; or (2) "can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned."  Fed. R. Evid. 201(b).  A district court "must take judicial notice if a party requests it and the court is supplied with the necessary information."  Fed. R. Evid. 201(c).  The accuracy of basic categorization and performance reports from authorities such as Morningstar and Lipper cannot reasonably be questioned.  *See In re NAHC, Inc. Sec. Litig.*, 306 F.3d 1314, 1331 (3d Cir. 2002) (relying on Rule 201(b) and finding that the district court properly took judicial notice of various documents cited by defendants in support of their motion to dismiss, including stock price data compiled by the Dow Jones news service).

[5]     Morningstar Rating Analysis for First Eagle Global I (SGIIX) (attached as Exhibit B to the Thome Decl.); Morningstar Rating Analysis for First Eagle Overseas I (SGOIX) (attached as Exhibit C to the Thome Decl.).  Morningstar has listed Class A shares of the Funds as "four star" rated.  *See* First Eagle Global A (SGENX) Fund Risk and Morningstar Rating, MORNINGSTAR (attached as Exhibit D to the Thome Decl.); First Eagle Overseas A (SGOVX) Fund Risk and Morningstar Rating, MORNINGSTAR (attached as Exhibit E to the Thome Decl.).  Morningstar "rates funds based on an enhanced Morningstar Risk-Adjusted Return measure, which also accounts for the effects of all sales charges, loads, or redemption fees."  *The Morningstar Rating for Funds*, MORNINGSTAR (attached as Exhibit F to the Thome Decl.).

exceptional returns are low in the market.  Morningstar rates the fee levels of Class I and Class A shares of the Global Fund and the Overseas Fund as either "Below Average" or "Low."[6]

Commensurate with superior performance and low fees, the size of the Funds has increased over time.  (Compl. ¶¶ 8, 80, 82.)  Between October 2009 and March 2014, the Global Fund grew from $19 billion to $49.6 billion.  (Compl. ¶ 80.)  For the same period, the Overseas Fund increased from $7 billion to $14.9 billion.  (Compl. ¶ 82.)[7]

### B.    The Mercer Global Low Volatility Equity Fund

First Eagle also provides sub-advisory services to the Mercer Fund.  (Compl. ¶¶ 43-44.) The Mercer Fund is sponsored and managed by Mercer Investment Management, Inc. ("Mercer").  (Compl. ¶¶ 44-45.)  Mercer receives 0.75% of the fund's assets under management as compensation for managing the Mercer Fund.  (Compl. ¶ 65.)  Mercer has retained First Eagle to manage a portion of the Mercer Fund's assets.  (Compl. ¶¶ 50-51.)  The Mercer Fund is a multi-manager strategy, meaning that Mercer has retained several investment advisers to manage

---

[6]     SGIIX First Eagle Global I Fund SGIIX Quote Price News, MORNINGSTAR (attached as Exhibit G to the Thome Decl.); SGOIX First Eagle Overseas I Fund SGOIX Quote Price News, MORNINGSTAR (attached as Exhibit H to the Thome Decl.); SGENX First Eagle Global A Fund SGENX Quote Price News, MORNINGSTAR (attached as Exhibit I to the Thome Decl.); SGOVX First Eagle Overseas A Fund SGOVX Quote Price News, MORNINGSTAR (attached as Exhibit J to the Thome Decl.).

[7]     Over the last 10 years, the Global Fund grew from approximately $8.6 billion to $49.6 billion.  For the same period, the Overseas Fund increased from approximately $6.8 billion to $14.9 billion.  *See* First Eagle Funds Annual Report, dated October 31, 2004, at 25, 39 (attached as Exhibit K to the Thome Decl.).

portions of the Mercer Fund.[8]  Although the total fee to investors is disclosed, the amount that Mercer pays each individual manager is not.  (Compl. ¶ 63.)[9]

Although Plaintiffs have no idea how much Mercer pays First Eagle for sub-advising a portion of the Mercer Fund (Compl. ¶ 63), they nonetheless allege, "on information and belief," that First Eagle's fees for managing a portion of the Mercer Fund are "lower" than the advisory fees First Eagle receives from the Funds.  (Compl. ¶ 63.)  Plaintiffs speculate that First Eagle's sub-advisory fee is possibly between "38 basis points and 50 basis points" (Compl. ¶ 66), numbers pulled out of thin air based upon Plaintiffs' review of fee arrangements that Mercer pays *other* sub-advisers "for other equity mutual funds."  (Compl. ¶ 64.)  Plaintiffs further allege that the investment strategy of the Mercer Fund is comparable to the investment strategy of both the Global Fund and Overseas Fund.  (Compl. ¶¶ 52, 54, 60.)

### C.    The Claims

In Count One, Plaintiffs claim that First Eagle violated Section 36(b) by charging investment advisory fees to the Global Fund that are so disproportionately large that they bear no reasonable relationship to the value of the services that First Eagle provides the Fund.  (Compl. ¶¶ 112-119.)  Count Two alleges that First Eagle violated Section 36(b) by charging excessive advisory fees to the Overseas Fund.  (Compl. ¶¶ 120-127.)

---

[8]    *See* Mercer Funds Prospectus, dated July 31, 2013, at 56, 82-85.  The Mercer Funds Prospectus, relied upon in the Complaint (*e.g.*, ¶¶ 54-58), is attached as Exhibit L to the Thome Decl.

[9]    *See* Thome Decl., Ex. L at 111.  Pursuant to an Exemptive Order, the SEC has determined that Mercer may choose not to "disclos[e] certain fees paid to non-affiliated subadvisors in documents filed with the SEC and provided to shareholders."  *Id.*

## ARGUMENT

While Plaintiffs assert that First Eagle violated Section 36(b), they do not offer any factual basis for concluding that First Eagle's advisory fees were disproportionately large relative to the services that First Eagle provides the Funds.  There are no allegations that the Funds' advisory fees exceeded competitors' fees for comparable funds or the fees that First Eagle charges to comparable clients.  The Complaint includes no factual allegations as to differences, if any, between the Funds' fees and the fees that First Eagle charges any other client.  Plaintiffs, thus, fail to meet the pleading obligations of a Section 36(b) claim.

## I.    PLAINTIFFS' ALLEGATIONS DO NOT GIVE RISE TO AN INFERENCE THAT THE ADVISORY FEES PAID BY THE GLOBAL FUND AND OVERSEAS FUND ARE SO DISPROPORTIONATELY LARGE THAT THEY BEAR NO REASONABLE RELATIONSHIP TO THE SERVICES RENDERED

To survive a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6), a complaint must "set out sufficient factual matter to show that the claim is facially plausible." *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009) (internal quotation marks omitted).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678.  "[T]he factual allegations of a complaint 'must be enough to raise a right to relief above the speculative level.'" *West Run Student Housing Assocs., LLC v. Huntington Nat'l Bank*, 712 F.3d 165, 169 (3d Cir. 2013) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). Conclusory or "bare-bones" allegations are not sufficient to survive a motion to dismiss, and "the complaining party must offer 'more than labels and conclusions' or 'a formulaic recitation of the elements of a cause of action.'" *Id.*

A.      **Scope of Section 36(b)**

Section 36(b) of the Investment Company Act provides that an investment adviser has a "fiduciary duty with respect to the receipt of compensation."  15 U.S.C. §80a-35(b).  The statute creates a private cause of action by a shareholder against an investment adviser "for breach of fiduciary duty in respect of such compensation" paid by a fund.  *Id.*  To face liability under Section 36(b), "an investment adviser must charge a fee that is so disproportionately large that it bears no reasonable relationship to the services rendered and could not have been the product of arm's length bargaining."  *Jones v. Harris Assocs. L.P.*, 559 U.S. 335, 346 (2010).

To assess "whether the fee schedule represents a charge within the range of what would have been negotiated at arm's-length in the light of all of the surrounding circumstances," courts consider "all pertinent facts."  *Id.* at 344.  The factors that courts have considered relevant to assessing whether the fee was within the range of what would have been negotiated at arm's-length are the following:  (1) the nature and quality of the services provided to fund shareholders; (2) the profitability of the fund to the adviser-manager; (3) fall-out benefits; (4) economies of scale; (5) comparative fee structures; and (6) the independence and conscientiousness of the trustees.  *See Jones*, 559 U.S. at 343-45; *Amron v. Morgan Stanley Inv. Advisors Inc.*, 464 F.3d 338, 340-41 (2d Cir. 2006).[10]  The Complaint includes no allegations with respect to the first, second, or third *Gartenberg* factors.

Plaintiffs bear the burden of showing that the challenged advisory fee is "outside the range that arm's-length bargaining would produce."  *Jones*, 559 U.S. at 347.  On a motion to dismiss, plaintiffs must plead facts necessary to a finding of liability and, in particular, the "facts

---

[10]      These factors are also known as the *Gartenberg* factors, named for the first case to assess liability under Section 36(b) of the Investment Company Act.  *See Jones*, 559 U.S. at 344.

pertinent to th[e] relationship between fees and services." *Amron*, 464 F.3d at 344 (quoting *Migdal v. Rowe Price-Fleming Int'l*, 248 F.3d 321, 327 (4th Cir. 2001)); *accord Krantz v. Prudential Inv. Fund Mgmt. LLC*, 305 F.3d 140, 143 (3d Cir. 2002); *In re Franklin Mut. Funds Fee Litig.*, 478 F. Supp. 2d 677, 687 (D.N.J. 2007).

      **B.**    **The Complaint Fails to State a Violation of Section 36(b) Because It Includes Insufficient Factual Allegations that the Funds' Advisory Fees Are Outside the Range that Arm's-Length Bargaining Would Produce**

The Complaint's allegations do not meet Plaintiffs' burden of showing that the Funds' advisory fees are outside the range that arm's-length bargaining would produce.  Plaintiffs have done little more than assert that First Eagle's advisory fees are excessive – which is legally insufficient to plead a Section 36(b) claim.  *See Migdal*, 248 F.3d at 327 ("To survive a motion to dismiss, a complaint may not simply allege in a conclusory manner that advisory fees are 'excessive.'  Instead, a plaintiff must allege facts that, if true, would support a claim that the fees at issue are excessive."); *Millenco L.P. v. MEVC Advisors, Inc.*, No. CIV. 02-142-JJF, 2002 WL 31051604, at *3 (D. Del. Aug. 21, 2002) ("It is well settled that a complaint may not allege that fees are excessive in a conclusory manner.").[11]

      **1.**    **Plaintiffs' Speculation that the Mercer Fund Has a Disproportionately Lower Advisory Fee than the Global Fund Does Not Give Rise to a Reasonable Inference of Misconduct**

The Complaint does not plead facts showing that the Global Fund's advisory fees were larger than those charged to any comparable client account.  The Complaint plainly reveals that Plaintiffs have no idea what Mercer pays First Eagle to sub-advise the Mercer Fund.  Plaintiffs plead, for example, that the sub-advisory fee that Mercer pays First Eagle "is 25 to 37 basis

---

[11]    The complaint in *Millenco* survived a motion to dismiss because the plaintiff alleged *facts* sufficient to plead the elements of a claim under Section 36(b).  *Id.*

points lower than the investment advisory fee rate that Mercer receives." (Compl. ¶ 66.) As the Complaint makes clear, however, advisory fees are expressed as a single number (a percentage) multiplied by the assets of the fund. (*See* Compl. ¶¶ 40, 64, 65.) Why is there no clear and straightforward presentation of the supposedly more favorable sub-advisory fee offered by First Eagle to the Mercer Fund? That answer is clear. Plaintiffs do not have that factual information, meaning that they *don't know one way or the other whether the Global Fund's advisory fee is lower, higher or identical to the Mercer Fund sub-advisory fee.* (*See* Compl. ¶ 63 (alleging that the First Eagle sub-advisory fees "have not been disclosed").) Lacking the most fundamental information about the sub-advisory fee received by First Eagle, Plaintiffs necessarily lack factual allegations establishing that there is a large disparity between the Global Fund advisory fee and the Mercer Fund sub-advisory fee. *See Jones*, 559 U.S. at 350 n.8 ("Only where plaintiffs have shown a *large disparity in fees* that cannot be explained by the different services in addition to other evidence that the fee is outside the arm's-length range will trial be appropriate.") (emphasis supplied).

The Complaint includes a fanciful chart to dress up and stretch out the plausibility of a claim that First Eagle receives an advisory fee from the Global Fund disproportionately larger than the sub-advisory fee it receives from the Mercer Fund. (Compl. ¶ 64.) The central defect of the chart – which is supposed to form the basis of a claim against First Eagle – is that it is irrelevant to the present case because *none of the data in that chart is based on advisory or sub-advisory fees charged by First Eagle.* To the contrary, the fee comparisons in that chart all concern *other* managers and the fees those *other* managers receive for providing sub-advisory services to *other* Mercer equity funds. (Compl. ¶¶ 63-67.) Allegations that some other

investment adviser may have breached its fiduciary duty to its own investors is not probative of whether First Eagle has breached its fiduciary duty to Global Fund investors. *Cf. In re Pharm. Indus. Average Wholesale Price Litig.*, 307 F. Supp. 2d 196 (D. Mass. 2004) (dismissing claims against one of the defendants in a class action alleging RICO violations against 42 companies where the claim was "essentially a guilt-by-association claim" because there were no allegations relating to that particular company and concluding that allegations implicating another defendant were not sufficient).

To state a claim under Section 36(b), "more specificity than an attenuated implication is required." *Hamilton v. Allen*, 396 F. Supp. 2d 545, 557 (E.D. Pa. 2005). Because *Iqbal* requires that Plaintiffs plead facts that allow the Court to draw the reasonable inference that First Eagle (and not some other adviser) is liable for a breach of fiduciary duty, this action should be dismissed. *Accord Krantz*, 305 F.3d at 143 (dismissing Section 36(b) action where plaintiffs did not allege "facts pertinent" to the relationship between the fees and services); *Hamilton*, 396 F. Supp. 2d at 557. Mere speculation that the Global Fund's advisory fees are disproportionately larger than the Mercer Fund's sub-advisory fees is woefully inadequate to avoid dismissal. *See Yampolsky v. Morgan Stanley Inv. Advisers Inc.*, No. 03 Civ. 5710, 2004 WL 1065533 (S.D.N.Y. May 12, 2004) (speculative and conclusory allegations of Section 36(b) violations insufficient to survive a Rule 12(b)(6) motion to dismiss), *aff'd sub nom., Amron v. Morgan Stanley Inv. Advisors Inc.*, 464 F.3d 338, 344 (2d Cir. 2006); *Hoffman v. UBS-AG*, 591 F. Supp. 2d 522, 539-41 (S.D.N.Y. 2008) (dismissing claims under Section 36(b) where the *Gartenberg* allegations lacked specificity).

**2.      The Complaint Pleads No Facts Showing that the Overseas Fund's Fees Were Disproportionately Larger to Any Comparable Advisory Client Account**

Like Plaintiffs' allegations involving the Global Fund, the Complaint includes no facts giving rise to an inference that the Overseas Fund's advisory fees are disproportionately larger than the fees of comparable client accounts.  As discussed above, Plaintiffs have no idea whether the Overseas Fund's advisory fee is larger or the same as the Mercer Fund sub-advisory fee. They similarly have no idea whether the Overseas Fund's advisory fee is "disproportionately" larger than the Mercer Fund sub-advisory fee.

Count Two of the Complaint is deficient for the independent and additionally compelling reason that the investment mandate of the Mercer Fund is not comparable to the investment mandate of the Overseas Fund.  Leading providers of independent investment research, such as Morningstar and Lipper, distinguish between "global" and "overseas" funds.  Morningstar, for example, classifies the Global Fund as a "world allocation" fund.[12]  The investment approach of such funds is the following:

> World-allocation portfolios seek to provide both capital appreciation and income by investing in three major areas:  stocks, bonds and cash.  While these portfolios do explore the whole world, most of them focus on the U.S., Canada, Japan, and the larger markets in Europe.  They should have less than 50% of their assets in emerging markets.  These portfolios typically have at least 10% of assets in bonds, less than 70% of assets in stocks, and at least 40% of assets in non-U.S. stocks or bonds.[13]

---

[12]      *See* Thome Decl. Exs. G and I.

[13]      *The Morningstar Category Classifications*, MORNINGSTAR at 18 (attached as Exhibit M to the Thome Decl.).  Lipper classifies the Global Fund as "Global Flexible."  *First Eagle Fund Family Overview*, FIRST EAGLE INVESTMENT MANAGEMENT (attached as Exhibit N to the Thome Decl.); *see U.S. Open-End, Closed-End, and Variable Annuity Fund Classification Descriptions*, LIPPER at 12 (defining "Global Flexible" funds) (attached as Exhibit O to the Thome Decl.).

The Overseas Fund, however, is not a world allocation fund.  Unlike the Global Fund, which can include a large allocation to fixed income investments and U.S. investments, the Overseas Fund is a foreign stock fund.  Morningstar classifies the Overseas Fund as a "foreign large blend" category in the "international equity" classification.[14]  The investment approach of international funds in this category is the following:

> Foreign large-blend portfolios invest in a variety of big international stocks.  Most of these portfolios divide their assets among a dozen or more developed markets, including Japan, Britain, France, and Germany.  These portfolios primarily invest in stocks that have market caps in the top 70% of each economically integrated market (such as Europe or Asia ex-Japan).  The blend style is assigned to portfolios where neither growth nor value characteristics predominate.  These portfolios typically will have less than 20% of assets invested in U.S. stocks.[15]

The Mercer Fund, like the Global Fund and unlike the Overseas Fund, can include a large allocation to U.S. equity investments.[16]

Notwithstanding these obvious differences between "global" and "overseas" funds, the Complaint simplistically treats these two kinds of funds as comparable investment strategies.  Relying on generic factors, such as investment style (Compl. ¶ 58) and common portfolio managers (Compl. ¶ 59), Plaintiffs contend that the Overseas Fund and the Mercer Fund have "the same investment strategies" (Compl. ¶ 60).  Any cursory reading of the prospectuses for the Funds, however, confirms that the overseas and global strategies are not "the same."  The

---

[14]     *See* Thome Decl. Exs. H, J and M at 22.

[15]     Thome Decl., Ex. M at 22.  Lipper classifies the Overseas Fund as "International Multi-Cap Core."  Thome Decl., Ex. N; *see* Thome Ex. O at 7 (defining "International Multi-Cap Core" funds).

[16]     *See* Thome Decl. Ex. L at 36 (under normal circumstances the Mercer Fund will invest at least 80% of its assets in equity securities of U.S. and foreign issuers and only 40-60% of its assets in equity securities of foreign issuers).

benchmark for assessing the performance of the Overseas Fund is the MSCI EAFE Index.[17]  The

performance benchmark for the Mercer Fund, by contrast, is the MSCI World Index.[18]  The

prospectuses highlight other differences in the investment strategies of global and overseas

funds, including, by way of example, operating expenses, investment turnover rates, and rates of

return.[19]

It appears that the Overseas Fund has been lumped in this action for no more compelling

reason than Plaintiffs erroneously equated "overseas" funds with "global" funds.  Count Two

should be dismissed for the independent reason that comparisons to the Mercer Fund are

insufficient to show that the advisory fee for a non-comparable product, like the Overseas Fund,

was so disproportionately large that it bears no reasonable relationship to the services rendered.

### 3.  The Complaint's Allegations Regarding Economies of Scale Fail to Support an Inference that Economies of Scale Have Been Realized

The Complaint fails to include specific factual allegations that First Eagle has not

adequately shared the benefits of economies of scale with the Funds.  The Complaint purports to

plead this factor by stating that the assets of the fund increased between 2009 and 2014, but the

Funds do not include breakpoints in their advisory fees.  (*See* Compl. ¶¶ 80-90.)  Such

allegations are insufficient to demonstrate that the Funds achieved economies of scale, or that

First Eagle has not shared economies of scale with investors in the form of enhanced investor

services.

---

[17]     *See* Thome Decl., Ex. A at 17.

[18]     *See* Thome Decl., Ex. L at 36.

[19]     *Compare* Thome Decl., Ex. A at 4-10 (discussing the Global Fund), *with id.* at 11-17 (discussing the Overseas Fund).

In *In re Scudder*, for example, the complaint "allege[d] only generally that Defendants 'failed to pass on the economies of scale they were realizing as the Funds grew.'" *In re Scudder Mutual Funds Fee Litig.*, No. 04 Civ. 1921, 2007 WL 2325862, at *16 (S.D.N.Y. Aug. 14, 2007). The court concluded that mere allegations that a fund has increased in size are insufficient to demonstrate that an adviser had not shared the benefits of economies of scale with a fund. The court reasoned that "Plaintiffs do not explain how, but merely presume that, economies of scale were achieved." *Id.* The court further stated: "Plaintiffs neglect to specify how any purported economies of scale were not passed on to the investors. Mere assertions that fees increased with the size of the Funds are not enough to establish that the benefits from economies of scale were not passed on to investors." *Id.* (internal quotation marks and citation omitted).

Similarly, in *In re Salomon Smith Barney Mutual Fund Fees Litigation*, the court found that almost identical allegations about economies of scale as are included in this action were insufficient to meet plaintiffs' obligation to plead facts giving rise to an inference that the adviser had not shared the benefits of economies of scale with fund investors. 528 F. Supp. 2d 332, 336 (S.D.N.Y. 2007), *aff'd in part, vacated in part sub nom.*, *R.W. Grand Lodge of F. & A.M. of Penn. v. Salomon Bros. All Cap Value Fund*, 425 F. App'x 25 (2d Cir. 2011). There, as here, plaintiffs complained that "[a]s the [f]unds under Defendants' control grew substantially, . . . Defendants failed to pass along the economies of scale generated by such growth in the form of reduced investor fees." *Id.* The court concluded that "non-Fund-specific, economic analysis regarding theoretical economies of scale" is not sufficient to survive a motion to dismiss. *Id.* at 339. Allegations about economies of scale must include "allegations of the costs. Plaintiffs

cannot meet their burden simply by pointing to the size of the funds and their rates of growth. There must be allegations regarding the costs of performing fund transactions or the relationship between such costs and the number of transactions performed." *Id.* at 338-39 (internal quotation marks and citation omitted); *see Amron*, 464 F.3d at 344-45 (economies of scale allegations insufficient when there were "no allegations regarding the costs of performing fund transactions or the relationship between such costs and the number of transactions performed"); *Krinsk v. Fund Asset Mgmt., Inc.*, 875 F.2d 404, 411 (2d Cir. 1989).[20]

Even were this Court to assume that economies of scale have been achieved, the Complaint's conclusory allegation that First Eagle has not implemented breakpoints (Compl. ¶ 88) does not support an inference that First Eagle has violated Section 36(b) of the Investment Company Act. Breakpoints represent only one of several ways in which economies of scale can be shared with investors. Other ways to share economies of scale with fund investors include "offering low fees from inception or making additional investments to enhance shareholder

---

[20]     *Accord Hoffman*, 591 F. Supp. 2d at 540 ("In order to meet their burden [with respect to economies of scale], Plaintiffs must make a substantive allegation regarding the actual transaction costs at issue and whether the costs per investor increased or decreased as the assets under management grew. Without such information, there is no way to determine whether any economy of scale even existed that could have been passed on to investors or whether there is another explanation for the statistics chosen by Plaintiffs") (internal citations omitted); *Mintz*, 2009 WL 735140, at *3 (economies of scale allegations insufficient where plaintiff did not allege the adviser's "costs nor the number of transactions during the relevant period"); *In re Goldman Sachs Mut. Funds*, No. 04 Civ. 2567, 2006 WL 126772, at *9 (S.D.N.Y. Jan. 17, 2006) ("[m]ere assertions that fees increased with the size of the Funds are not enough to establish that the benefits from economies of scale were not passed on to investors"); *Kalish v. Franklin Advisers, Inc.*, 742 F. Supp. 1222, 1238 (S.D.N.Y. 1990) (requiring plaintiffs to show "proof of decreasing costs on a per-unit basis" as the fund increases in size; "Plaintiffs in prior cases have argued in substance that since a fund increased dramatically in size, economies of scale must have been realized. The courts reject [this] argument.").

services." *In re Am. Mut. Funds Fee Litig.*, No. CV 04-5593, 2009 WL 5215755, at *52 (C.D. Cal. Dec. 28, 2009) (internal citation omitted).

The increase in the size of a fund does not suggest that First Eagle has breached any duties to the Funds with respect to the receipt of compensation.  If Plaintiffs were correct that a growing fund raises an inference of a breach of fiduciary duty, "then any fund that grew over time while not simultaneously lowering its fees would be subject to suit under the [Investment Company Act].  This cannot be allowed.  It would also violate a stated intent of the drafters of the 1970 amendments, which was to 'prevent the harassment of investment advisors by ill-founded or nuisance law suits, the so-called strike suit.' H.R. Rep. 1382, 91st Cong., 2d Sess., 8 (1970)." *In re Franklin Mut. Fund Fees Litig.*, 478 F. Supp. 2d at 687 (internal citations omitted).  For this reason, Plaintiffs' inadequate allegations regarding the sharing of economies of scale with fund investors is an independent reason to dismiss this action.

> **4.      The Complaint's Allegations Regarding the Conscientiousness and Independence of the Trustees Are Too Conclusory to Support an Inference that First Eagle Violated Section 36(b)**

Plaintiffs' allegations regarding the conscientiousness and independence of the trustees (Compl. ¶¶ 91-108) do not give rise to an inference that the Funds' fees are disproportionately large in relation to the services rendered.[21]  Plaintiffs' allegation that service on the Funds' Board is a part-time job for the Trustees, and that the Board is required to oversee six other mutual funds (Compl. ¶¶ 93-95), does not call into question the independence or conscientiousness of the Board.  *See, e.g.*, *Amron*, 464 F.3d at 345 (allegations that directors received compensation

---

[21]      As noted above, the Complaint does not purport to rely on the remaining *Gartenberg* factors – the nature and quality of the services provided to fund shareholders, the profitability of the fund to the adviser-manager, and fall-out benefits – in attempting to allege a claim.

and "serve[d] on the boards of many other mutual funds, businesses, and charitable organizations" were "insufficient as a matter of law" to call into question the independence and conscientiousness of the directors); *Migdal*, 248 F.3d at 330 ("[M]embership on the boards of several funds within a mutual fund complex is the prevailing practice in the industry").[22] Receipt and review by the Board of information prepared by an adviser similarly does not impair the independence and conscientiousness of the Board.   (Compl. ¶ 96.)   As the Fourth Circuit observed: "One would expect any conscientious director to request information from management and staff on the day-to-day operations for which they are responsible." *Migdal*, 248 F.3d at 331.   Indeed, as the Fourth Circuit concluded, the Investment Company Act "approves this very practice." *Id.*

Plaintiffs' bald assertion that the Board was not conscientious because the trustees approved without "appropriate[] examin[ation]" the payment of advisory fees to First Eagle that are higher than the sub-advisory fees paid by other clients is entitled to no deference.   (Compl. ¶ 98.)   *First*, as discussed above, the Complaint is woefully deficient of factual allegations that any First Eagle client received more favorable advisory fees than the Funds.   Plaintiffs' allegation is therefore without a factual predicate.   *Second*, Plaintiffs' suggestion that the Board approved the advisory fees based upon false assumptions about the level and cost of sub-advisory services provided by First Eagle to other clients is nothing but surmise.   The Complaint pleads no facts regarding the actual reasons that the Board approved the payment of advisory

---

[22]   *See also Krantz v. Prudential Inv. Fund Mgmt. LLC*, 77 F. Supp. 2d 559, 563 (D.N.J. 1999) (allegations that "the Fund's directors serve on boards of multiple funds for which they receive significant compensation" fails to state a claim that the directors were not independent), *aff'd*, 305 F.3d 140, 143-44 (3d Cir. 2002); *In re Salomon Smith Barney*, 528 F. Supp. 2d at 339 (allegation that "it was unlikely that the Directors could devote the amount of time to oversee many portfolios on their watch" insufficient as a matter of law).

fees to First Eagle, much less facts regarding supposed failures in the Board's diligence. Plaintiffs, thus, have no basis to conclude that the Board approved the advisory fees for the Funds on less favorable conditions than comparable clients received, or the reasons that the Board reached that hypothetical conclusion.

## CONCLUSION

For the foregoing reasons, the Court should grant Defendant's motion to dismiss the Complaint for failure to state a claim upon which relief can be granted.


|  | */s/ Jason J. Rawnsley* |
|---|---|
|  | Frederick L. Cottrell, III (#2555) |
|  | Jason J. Rawnsley (#5379) |
| Of Counsel: | Richards, Layton & Finger, P.A. |
|  | One Rodney Square |
| Lori A. Martin | 920 N. King Street |
| Brad E. Konstandt | Wilmington, DE  19801 |
| Wilmer Cutler Pickering Hale and Dorr LLP | (302) 651-7700 |
| 7 World Trade Center | cottrell@rlf.com |
| 250 Greenwich Street | rawnsley@rlf.com |
| New York, NY 10007 |  |
| (212) 230-8800 | *Attorneys for Defendant* |
| Lori.Martin@wilmerhale.com | *First Eagle Investment Management, LLC* |
| Brad.Konstandt@wilmerhale.com |  |

Matthew T. Martens
Matthew J. Thome
Wilmer Cutler Pickering Hale and Dorr LLP
1875 Pennsylvania Avenue NW
Washington, DC 20006
(202) 663-6000
Matthew.Martens@wilmerhale.com
Matthew.Thome@wilmerhale.com

Dated:  July 14, 2014

## **CERTIFICATE OF SERVICE**

I hereby certify that on July 14, 2014, I caused the foregoing to be electronically filed with the Clerk of the Court using CM/ECF, which will send notification of such filing to registered participants, and further certify that I caused copies of the foregoing document to be served upon the following via electronic mail:

Richard A. Barkasy
SCHNADER HARRISON SEGAL & LEWIS LLP
824 N. Market Street, Suite 800
Wilmington, DE 19801
(302) 888-4554
rbarkasy@schnader.com

Ira N. Richards
SCHNADER HARRISON SEGAL & LEWIS LLP
1600 Market Street, Suite 3600
Philadelphia, PA 19103
(215) 751-2000
irichards@schnader.com

Robin F. Zwerling
Jeffrey C. Zwerling
Susan Salvetti
Andrew W. Robertson
ZWERLING, SCHACHTER & ZWERLING, LLP
41 Madison Avenue
New York, NY 10010
(212) 223-3900
rzwerling@zsz.com
jzwerling@zsz.com
ssalvetti@zsz.com
arobertson@zsz.com

*/s/ Jason J. Rawnsley*
Jason J. Rawnsley (#5379)
rawnsley@rlf.com