**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF DELAWARE**

THE LYNN M. KENNIS TRUST U/A DTD 10/02/2002, BY LYNN M. KENNIS AS TRUSTEE, and THE RONALD J. KENNIS TRUST, BY RONALD J. KENNIS AND DOLORES M. KENNIS AS TRUSTEES,

Plaintiffs,

v.

FIRST EAGLE INVESTMENT MANAGEMENT, LLC,

Defendant.

Civil Action No. 14-585-SLR-SRF

**REPORT AND RECOMMENDATION**

## I. INTRODUCTION

Presently before the court in this action alleging violations of Section 36(b) of the Investment Company Act of 1940 (the "Act"), 15 U.S.C. § 80a-35(b), is defendant First Eagle Investment Management, LLC's ("FEIM" or "defendant") motion to dismiss for failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6). (D.I. 15) For the following reasons, I recommend that the court deny the motion to dismiss.

## II. BACKGROUND[1]

[1] When considering a Rule 12(b)(6) motion to dismiss, the court must accept as true all factual allegations in the complaint and view them in the light most favorable to the plaintiff. *See Newman v. Beard*, 617 F.3d 775, 779 (3d Cir. 2010) ("We accept all factual allegations as true, construe the amended complaint in the light most favorable to [the plaintiff], and determine whether, under any reasonable reading of the . . . complaint, he may be entitled to relief."); *see also Umland v. Planco Fin. Servs.*, 542 F.3d 59, 64 (3d Cir. 2008). Consequently, the following

FEIM serves as investment adviser to the First Eagle Global Fund (the "Global Fund") and the First Eagle Overseas Fund (the "Overseas Fund") (together, the "Funds") pursuant to an Investment Advisory Contract dated December 16, 2010 (the "IAC"). (D.I. 1 at ¶¶ 1-2, 27) Each of the Funds is a mutual fund registered under the Act. (*Id.* at ¶ 18) Plaintiff, the Lynn M. Kennis Trust U/A DTD 10/02/2002, is a shareholder in the Global Fund and has continuously owned shares in the Global Fund since September 2012. (*Id.* at ¶ 15) Plaintiff, the Ronald J. Kennis Trust (together with the Lynn M. Kennis Trust U/A DTD 10/02/2002, "plaintiffs"), is a shareholder in the Overseas Fund and has continuously owned shares in the Overseas Fund since May 2013. (*Id.* at ¶ 16) A Board of Trustees (the "Board") oversees the Funds, and selects and monitors the Funds' service providers. (*Id.* at ¶ 25)

The IAC provides that FEIM must offer certain investment advisory services to each Fund,[2] including: (a) "regularly provid[ing] [each Fund] with investment research, advice and supervision;" (b) "furnish[ing] continuously an investment program for [each Fund's] Portfolio;" and (c) "recommend[ing] what securities shall be purchased for each of the Funds, what portfolio securities shall be sold by each Fund, and what portion of each Fund's assets shall be held uninvested." (*Id.* at ¶ 28) The Funds' most recent prospectus, dated March 1, 2014 (the "Prospectus"), provides additional information about the investment advisory services provided by FEIM to the Funds and indicates that both Funds invest primarily in equity securities, with substantial investments in the equity securities of foreign companies. (*Id.* at ¶¶ 29-30)

---

background information is drawn from plaintiffs' complaint dated May 7, 2014, and does not constitute findings of fact. (D.I. 1)

[2] The same team of FEIM portfolio managers, analysts, research associates, and traders (the "Global Value Team") provides investment advisory services to both Funds. (D.I. 1 at ¶ 34) FEIM employs the same approach in selecting investments for both Funds. (*Id.* at ¶ 33)

In exchange for the investment advisory services provided by FEIM, the IAC requires each Fund to pay FEIM an annual fee calculated as a percentage of the Fund's assets under management ("AUM"). (*Id.* at ¶ 39) The rate for each Fund is 0.75% of the AUM. (*Id.* at ¶ 40) During fiscal year 2013, the Global Fund and the Overseas Fund paid $306 million and $97 million in investment advisory fees, respectively. (*Id.* at ¶¶ 41-42)

FEIM provides substantially the same investment advisory services to other clients, including a mutual fund named the Mercer Global Low Volatility Equity Fund (the "Subadvised Fund"), which was organized and sponsored by Mercer Investment Management, Inc. ("Mercer"), a financial institution independent of FEIM.[3] (*Id.* at ¶¶ 43-45, 52-53) Mercer serves as the Subadvised Fund's investment adviser and receives investment advisory fees from the Subadvised Fund. (*Id.* at ¶ 49) Mercer subcontracts with FEIM to provide investment advisory services to the Subadvised Fund in exchange for an undisclosed fee, which is paid by Mercer. (*Id.* at ¶¶ 50-51, 63) The Subadvised Fund's most recent prospectus indicates that FEIM employs the same or substantially the same investment strategies on behalf of the Suabdvised Fund as it does on behalf of the Funds. (*Id.* at ¶¶ 54-58)

Publicly available information regarding Mercer's fee arrangements with subadvisers for other equity mutual funds suggests that the fees paid by the Subadvised Fund are significantly lower than the fees paid by the Funds for substantially the same investment advisory services. (*Id.* at ¶¶ 64-70) Additional services provided by FEIM to the Funds beyond the investment advisory services are governed by separate contracts for separate compensation, and do not affect the fees paid to FEIM under the IAC. (*Id.* at ¶¶ 71-74)

[3] The same Global Value Team that manages the Funds also manages the Subadvised Fund's investment portfolio, and uses substantially the same investment strategies in providing investment advisory services to the Subadvised Fund as it does to the Funds. (D.I. 1 at ¶¶ 59-60)

The Prospectus identifies eight individuals who are officers of the Funds, and who also serve as officers of six other mutual funds managed by FEIM and its affiliates. (*Id.* at ¶¶ 75-76) The Funds' officers are employed by FEIM and devote a majority of their time providing services to other clients of FEIM. (*Id.* at ¶ 77) The complaint alleges that the officers' annual compensation allocable to their services as officers of the Funds is disproportionate to their level of service in connection with the Funds. (*Id.* at ¶¶ 78-79)

Between 2009 and the present, the Funds' AUM has grown and, correspondingly, the amount of investment advisory fees paid by the Funds has increased. (*Id.* at ¶¶ 80-83) However, the increase in investment advisory fees paid to FEIM by each Fund was not accompanied by a proportionate increase in the level of services provided by FEIM to the Funds, and FEIM realized economies of scale as the Funds' AUM increased without passing on those benefits to the Funds. (*Id.* at ¶¶ 84-85, 90) Specifically, the Funds' investment advisory fee schedules do not include any breakpoints to reduce the Funds' fee rate as the AUM increased. (*Id.* at ¶¶ 86-89)

Pursuant to the terms of the IAC, the Board must approve the investment advisory fees paid by the Funds on an annual basis. (*Id.* at ¶¶ 91-92) Plaintiffs allege that the Board has approved the IAC each year without independently assessing the amount of investment advisory fees paid by the Funds or effectively representing the interests of the Funds' shareholders, instead relying on information prepared by FEIM. (*Id.* at ¶¶ 93, 96-103) In contrast, plaintiffs contend that FEIM's fees for providing investment advisory services to the Subadvised Fund are the product of an arm's length negotiating process between Mercer and FEIM. (*Id.* at ¶¶ 104-08) According to plaintiffs, the investment advisory fees paid from the Funds' assets directly reduce the value of the Funds' investment portfolio. (*Id.* at ¶¶ 109-11)

Plaintiffs have brought this two count complaint, alleging that the investment advisory fees charged by FEIM are excessive and violate FEIM's fiduciary duty owed to the Funds under Section 36(b) of the Act. Specifically, plaintiffs allege that FEIM breached a fiduciary duty under Section 36(b) by charging investment advisory fees to the Funds "that are so disproportionately large that they bear no reasonable relationship to the value of the services provided by Defendant and could not have been the product of arm's-length bargaining." (*Id.* at ¶¶ 116, 124) The first count of the complaint asserts that FEIM breached its fiduciary duty as it relates to the Global Fund, and the second count alleges the same as to the Overseas Fund.

## III. LEGAL STANDARD

Rule 12(b)(6) permits a party to move to dismiss a complaint for failure to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6). When considering a Rule 12(b)(6) motion to dismiss, the court must accept as true all factual allegations in the complaint and view them in the light most favorable to the plaintiff. *Umland v. Planco Fin. Servs.*, 542 F.3d 59, 64 (3d Cir. 2008).

To state a claim upon which relief can be granted pursuant to Rule 12(b)(6), a complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Although detailed factual allegations are not required, the complaint must set forth sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007); *see also Ashcroft v. Iqbal*, 556 U.S. 662, 663 (2009). A claim is facially plausible when the factual allegations allow the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. *Iqbal*, 556 U.S. at 663; *Twombly*, 550 U.S. at 555-56.

When determining whether dismissal is appropriate, the court must conduct a three-step analysis.[4] *See Santiago v. Warminster Twp.*, 629 F.3d 121, 130 (3d Cir. 2010). First, the court must identify the elements of the claim. *Iqbal*, 556 U.S. at 675. Second, the court must identify and reject conclusory allegations. *Id.* at 678. Third, the court should assume the veracity of the well-pleaded factual allegations identified under the first prong of the analysis, and determine whether they are sufficiently alleged to state a claim for relief. *Id.*; *see also Malleus v. George*, 641 F.3d 560, 563 (3d Cir. 2011). The third prong presents a context-specific inquiry that "draw[s] on [the court's] experience and common sense." *Id.* at 663-64; *see also Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009). As the Supreme Court instructed in *Iqbal*, "where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged - but it has not 'show[n]' - 'that the pleader is entitled to relief.'" *Iqbal*, 556 U.S. at 679 (quoting Fed. R. Civ. P. 8(a)(2)).

## IV. DISCUSSION

Section 36(b) of the Act creates a fiduciary duty in a mutual fund's investment adviser "with respect to the receipt of compensation for services." 15 U.S.C. § 80a—35(b). To state a claim for breach of fiduciary duty under § 36(b), a plaintiff "must meet no more rigorous a burden than that found in Federal Rule of Civil Procedure 8(a)." *Am. Chems. & Equip., Inc. 401(k) Ret. Plan v. Principal Global Investors, LLC*, 2014 WL 5426908, at *3 (S.D. Iowa Sept. 10, 2014) (quoting *Amron v. Morgan Stanley Inv. Advisors, Inc.*, 464 F.3d 338, 343 (2d Cir. 2006)). The plaintiff bears the burden of establishing a breach of fiduciary duty. 15 U.S.C. §

[4] Although *Iqbal* describes the analysis as a "two-pronged approach," the Supreme Court observed that it is often necessary to "begin by taking note of the elements a plaintiff must plead to state a claim." 556 U.S. at 675, 679. For this reason, the Third Circuit has adopted a three-pronged approach. *See Santiago v. Warminster Twp.*, 629 F.3d 121, 130 n.7 (3d Cir. 2010); *Malleus v. George*, 641 F.3d 560, 563 (3d Cir. 2011).

80a—35(b)(1); *see also Green v. Fund Asset Mgmt., L.P.*, 286 F.3d 682, 685 (3d Cir. 2002).

To state a claim under § 36(b), a plaintiff must plead facts demonstrating "the relationship between the fees charged to the fund and the services rendered to the fund." *Am. Chems.*, 2014 WL 5426908, at *5; *see also Migdal v. Rowe Price-Fleming Int'l, Inc.*, 248 F.3d 321, 327 (4th Cir. 2001). Specifically, a plaintiff must plead sufficient facts to show that the fee charged, in the context of all of the surrounding facts and circumstances, was "so disproportionately large that it bears no reasonable relationship to the services rendered and could not have been the product of arm's-length bargaining." *Gartenberg v. Merrill Lynch Asset Mgmt., Inc.*, 694 F.2d 923, 928 (2d Cir. 1982) (internal citations omitted); *see also Jones v. Harris Assocs. L.P.*, 559 U.S. 335, 344 (2010). "[A] § 36(b) complaint is not sufficient if it rests solely on general and conclusory legal assertions that the fees charged were excessive." *Forsythe v. Sun Life Fin., Inc.*, 417 F. Supp. 2d 100, 115 (D. Mass. 2006).

In *Jones v. Harris Associates L.P.*, the Supreme Court identified a series of factors adopted by the Second Circuit in *Gartenberg* that are useful in assessing claims brought under § 36(b). *See Jones*, 559 U.S. at 344-45 n.5. The *Gartenberg* factors include, but are not limited to: "(1) the nature and quality of the services provided to the fund and shareholders; (2) the profitability of the fund to the adviser; (3) any 'fall-out financial benefits,' those collateral benefits that accrue to the adviser because of its relationship with the mutual fund; (4) comparative fee structure . . .; and (5) the independence, expertise, care, and conscientiousness of the board in evaluating adviser compensation." *Id.* (citing *Gartenberg*, 694 F.2d at 929-32). The Supreme Court also discussed economies of scale. *Id.* at 344. However, "[b]ecause a claim under § 36(b) need only meet the liberal pleading standards set forth in Rule 8, it is not necessary for a plaintiff to make a conclusive showing of each *Gartenberg* factor to survive a motion to

dismiss." *Zehrer v. Harbor Capital Advisors, Inc.*, 2014 WL 6478054, at *2 (N.D. Ill. Nov. 18, 2014). As this court has noted, "the *Gartenberg* decision . . . is helpful only after the complete evidentiary record has been established." *Millenco L.P. v. MEVC Advisors, Inc.*, C.A. No. 02-142-JJF, 2002 WL 31051604, at *3 n.3 (D. Del. Aug. 21, 2002) (noting that the Third Circuit has not established a specific standard for evaluating excessive fees under § 36(b)).

In their complaint, plaintiffs have relied on three of the *Gartenberg* factors: (1) the adequacy of the fee comparisons; (2) economies of scale; and (3) the independence of the Board. (D.I. 16 at 10-20) FEIM moves to dismiss on the basis that plaintiffs have failed to plausibly allege that the advisory fees it receives are so disproportionately large that they bear no reasonable relationship to the services rendered to the Funds based on the foregoing factors. In its review of the pending motion, the court must deny the motion to dismiss even if plaintiffs failed to allege the existence of certain *Gartenberg* factors if the complaint, taken as a whole, alleges facts demonstrating a plausible claim for relief under § 36(b). *See In re Blackrock Mutual Funds Advisory Fee Litig.*, 2015 WL 1418848, at *4 (D.N.J. Mar. 25, 2015) (quoting *Kasilag, et al. v. Hartford Inv. Fin. Servs., LLC*, 2012 WL 6568476 (D.N.J. Dec. 17, 2012)).

**A. Adequacy of Fee Comparisons**

In support of its motion to dismiss, FEIM contends that the complaint fails to plead any facts indicating that the investment advisory fees paid by the Funds are disproportionately large in comparison to the advisory fees paid by other clients of FEIM. (D.I. 16 at 10-11) According to FEIM, the comparisons drawn in plaintiffs' complaint rely on data that is not based on advisory or sub-advisory fees charged by FEIM, but is instead based on fees charged by other managers for providing sub-advisory services to other Mercer equity funds. (*Id.* at 11-13) Moreover, FEIM alleges that the investment mandate of the Subadvised Fund is not comparable

to the investment mandate of the Overseas Fund because the Overseas Fund cannot include a large allocation to U.S. equity investments. (*Id.* at 13-14) FEIM alleges that the complaint's treatment of the Global Fund and the Overseas Fund as interchangeable investment strategies illustrates the fatal deficiencies in the complaint at this stage of the proceedings. (*Id.* at 14-15)

In response, plaintiffs contend that the disparity between advisory fees charged to the Funds and the Subadvised Fund supports a plausible inference that the advisory fees charged to the Funds are disproportionate to the services provided, and fall outside the range of what could be negotiated at arm's length. (D.I. 21 at 15-16) Plaintiffs allege that the data reflected in the complaint's charts passes muster at this stage of the proceedings because the advisory fees received by FEIM on the open market for substantially the same services are not publicly disclosed. (*Id.* at 16-19)

Contrary to FEIM's contentions, the complaint in the present matter contains more than conclusory allegations regarding the allegedly excessive nature of the advisory fees. Specifically, the complaint alleges that FEIM charges the Funds 75 basis points of each Fund's AUM, whereas it charges Mercer between 38 and 50 basis points of the Subadvised Fund's AUM to provide substantially the same investment advisory services. (D.I. 1 at ¶¶ 40, 66) Plaintiffs base their estimate of the Subadvised Fund's fees on publicly available information regarding Mercer's fee arrangements with other captive mutual funds, including fee arrangements with twelve different subadvisers for five separate equity mutual funds. (*Id.* at ¶ 64) According to the calculations set forth in the complaint, application of the lower rates to the Global Fund and the Overseas Fund would save the Funds up to $183 million and $55 million in annual fees, respectively. (*Id.* at ¶¶ 68-69) FEIM's challenges to the factual underpinnings of these allegations cannot be resolved by the court prior to the conclusion of fact discovery.

Similarly, the court cannot make factual findings regarding FEIM's contention that the Overseas Fund is not sufficiently comparable to the Subadvised Fund at this stage of the proceedings. *See In re Blackrock Mut. Funds Advisory Fee Litig.*, 2015 WL 1418848, at *5 (D.N.J. Mar. 27, 2015) (finding that "the disagreements over the degree of relevancy of a fee comparison should not be decided at the pleadings stage"). This is particularly true where, as here, FEIM relies on evidence outside the pleadings in support of its argument regarding the distinctions between the Overseas Fund and the Subadvised Fund.[5] Although the Supreme Court has cautioned that "courts should not rely too heavily on comparisons with fees charged to mutual funds by other advisers," *Jones*, 559 U.S. at 350-51, *Jones* is distinguishable from the facts of the present case because it was decided on summary judgment, after discovery had concluded.

The complaint further alleges that the higher fees paid by the Funds pursuant to the IAC "are not justified by any additional services provided to the Funds by [FEIM] or its affiliates." (*Id.* at ¶ 70) Plaintiffs contend that, "like the Funds' IAC, the subadvisory agreement requires FEIM to 'conduct an ongoing program of investment, evaluation and, if appropriate, sale and reinvestment' of the Subadvised Fund's assets, including 'purchas[ing], hold[ing] and sell[ing] investments' and 'monitor[ing] such investments on an ongoing basis.'" (*Id.* at ¶ 53) Plaintiffs refer to the Subadvised Fund's prospectus to draw a comparison between the investment strategies of the Funds and the Subadvised Fund, further illustrating the similarities in services

---

[5] The court declines to consider the Morningstar documents attached to FEIM's motion to dismiss at this stage of the proceedings. *See* Federal Rule of Evidence 201(b)(2) (court may only take judicial notice of "a fact that is not subject to reasonable dispute because it . . . can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned."). The documents explicitly state that "[t]he information contained herein . . . is not warranted to be accurate, complete or timely," indicating that they are subject to reasonable dispute and are not capable of accurate and ready determination. (D.I. 17 at Exs. B & C)

provided to the Funds and the Subadvised Fund. (*Id.* at ¶¶ 54-58) Plaintiffs have alleged facts in relationship to both the fee charged and the services provided, unlike the circumstances set forth in *Migdal*. 248 F.3d at 327 ("[P]laintiffs did not address in any way the relationship between the fees that the advisers received and the services which they provided in return.").

Similar allegations were found to be sufficient under the Rule 12(b)(6) standard in *Goodman v. J.P. Morgan Inv. Mgmt., Inc.*, 2015 WL 965665, at *4 (S.D. Ohio Mar. 4, 2015). As in *Goodman*, "[p]laintiffs have pled a notable disparity in the fees obtained for servicing the . . . funds with which they are involved and the subadvised funds, while concurrently pleading that the services provided to and resources involved in all of the funds are substantially the same." *Id.* at *5 (noting that, as in the case at bar, the "prospectus disclosures and involvement by the same portfolio managers and investment professionals support the similarity [of the] allegations."). Although FEIM disputes whether the comparison with the Subadvised Fund is relevant, and questions whether important distinctions between the Global Fund and the Overseas Fund may be overlooked in the complaint, the ultimate weight of the comparisons is not before the court. Taking the factual allegations of the complaint as true, plaintiffs' comparison of the Subadvised Fund to the Funds is sufficient to withstand a Rule 12(b)(6) motion to dismiss. *Am. Chems.*, 2014 WL 5426908 at *6.

FEIM's attempt to distinguish *Goodman* based on the identification of specific fees received by the defendant as a subadvisor to the subadvised funds in the *Goodman* complaint is unavailing. (D.I. 30 at 1) The parties do not dispute that the specific fee rate charged to the Subadvised Fund is not publicly disclosed, and would therefore only be made known during the discovery process. (D.I. 28 at 1; D.I. 1 at ¶ 63) Moreover, courts have recognized that "[i]t is not necessary, and is often impossible, for § 36(b) plaintiffs to file suit with the fee data that

relates to the entire damages period." *See Am. Chem.*, 2014 WL 5426908, at *1 n.1 (noting that plaintiff filed complaint to preserve its claim for damages in the year between plaintiff's original filing and its second complaint filed after publicly available information was updated). Therefore, plaintiffs' allegations regarding the disparity in basis points between the advisory fee rates charged to the Funds and the Subadvised Fund are sufficient to state a claim, and the veracity of those allegations, along with the specific fee rate charged to the Subadvised Fund, are appropriately the subject of discovery.

Moreover, FEIM's reliance on the Fourth Circuit's decision in *Migdal* is not compelling because the case is not factually analogous to the circumstances presently before the court. In *Migdal*, the Fourth Circuit granted the defendant's motion to dismiss after concluding that the complaint did not sufficiently address the relationship between the fees received and the services provided, as the complaint contained insufficient facts regarding the services rendered. *Migdal*, 248 F.3d at 327. As previously discussed, the complaint in the instant case sufficiently addresses the relationship between the fees received and services rendered.

Taken as a whole, plaintiffs' complaint pleads sufficient facts regarding the fees paid to FEIM and their relationship to the services rendered to present a plausible claim that the fees are disproportionately large. *See Goodman*, 2015 WL 965665, at *5. In light of the foregoing, I recommend that the court deny FEIM's motion to dismiss.

**B. Economies of Scale**

FEIM further alleges that the complaint fails to include specific factual allegations showing that the Funds achieved economies of scale, or that FEIM did not adequately share economies of scale with the Funds' investors. (D.I. 16 at 15-18) According to FEIM, the increase in size of the Funds does not automatically suggest that FEIM breached a fiduciary duty

to the Funds relating to its receipt of compensation. (*Id.* at 18) In response, plaintiffs note that the substantial increase in fees charged to the Funds, without a corresponding change in the level of services provided, is sufficient at this stage of the proceedings to suggest that the fees are excessive. (D.I. 21 at 21-22)

Allegations regarding economies of scale do not constitute an independent cause of action under § 36(b). *See Am. Chems.*, 2014 WL 5426908, at *6. Instead, they are considered as one factor under *Gartenberg* to determine whether an investment adviser breached its fiduciary duty by charging excessive fees. *Id.* The complaint in the instant action alleges that the Funds' assets more than doubled between 2009 and 2013. (D.I. 1 at ¶¶ 80, 82) As a result of the increase in AUM, the investment advisory fees paid by the Funds also increased exponentially. (*Id.* at ¶¶ 81, 83) The complaint states that the increase in investment advisory fees paid by the Funds was not accompanied by a proportionate increase in services or costs incurred by FEIM. (*Id.* at ¶ 84) The Funds' investment advisory fee schedules did not include any breakpoints to reduce the Funds' fee rate as AUM increased and ensure that the benefits of economies of scale would accrue to investors. (*Id.* at ¶¶ 86-90)

The allegations in the complaint, taken as true at this stage of the proceedings, are sufficient to establish that FEIM did not adequately share the benefits of economies of scale with the Funds. Plaintiffs' allegations regarding economies of scale support their claim that the fees are disproportionate to the services rendered and are not the product of arm's length bargaining. *See In re Blackrock Mut. Funds Advisory Fee Litig.*, 2015 WL 1418848, at *7 (D.N.J. Mar. 27, 2015) (denying motion to dismiss while allowing for an inference that "the adviser's 'breakpoints did not give shareholders meaningful benefits from the economies of scale enjoyed by the Funds'"); *Reso ex rel. Artisan Int'l Fund v. Artisan Partners Ltd. P'ship*, 2011 WL 5826034, at

*9 (E.D. Wis. Nov. 18, 2011) (denying motion to dismiss due to allegations relating to the economies of scale factor of *Gartenberg*); *Sins v. Janus Cap. Mgmt., LLC*, 2006 WL 3746130, at *3 (D. Colo. Dec. 15, 2006) (allegations regarding increase in assets without fee breakpoints could show disproportionality); *In re Goldman Sachs Mut. Funds Fee Litig.*, 2006 WL 126772, at *9 n.24 (S.D.N.Y. Jan. 17, 2006) (allegations that significant increase in fees over time, without corresponding change in quality of services rendered, is sufficient to meet the pleading requirements of *Gartenberg*).

Unlike the facts set forth in *In re Scudder Mutual Funds Fee Litigation*, 2007 WL 2325862, at *16 (S.D.N.Y. Aug. 14, 2007), the complaint in the present case specifically identifies the amount of the increase in AUM, the corresponding amount of the fee increase with no additional services provided, and the lack of breakpoints in the fee schedules to reduce the advisory fees. The facts of *In re Scudder* are distinguishable from the facts of the case at bar because the allegations regarding economies of scale in *In re Scudder* pertained to funds in which the named plaintiffs did not own shares, or they involved time periods outside of the statute of limitations. *Id.* Moreover, FEIM's reliance on *In re Salomon Smith Barney Mut. Fund Fees Litig.*, 528 F. Supp. 2d 332, 338-39 (S.D.N.Y. 2007) is unavailing because plaintiffs' complaint in the present matter contains allegations regarding the costs. (D.I. 1 at ¶¶ 84-85)

**C. Sufficiency of Board's Fee Approval Process**

FEIM next contends that the complaint's allegations regarding the lack of conscientiousness and independence of the Board do not give rise to an inference that the Funds' fees are disproportionately large in relation to the services rendered. (D.I. 16 at 18) According to FEIM, allegations that Board members' service is a part-time job, and the Board oversees multiple other mutual funds, do not sufficiently challenge the Board's independence. (*Id.* at 18-

19) Moreover, FEIM alleges that the Board's receipt and review of information prepared by an adviser does not impair the independence of the Board. (*Id.* at 19)

In response, plaintiffs allege that the Board's approval should be given little deference because the approval process used by the Board was deficient, as it was neither competitive nor conducted at arm's length. (D.I. 21 at 21-22) Specifically, plaintiffs argue that the Board did not solicit proposals from other investment advisers, and did not negotiate a "most favored nation" provision into the IAC. (*Id.* at 29-30) Plaintiffs contend that FEIM's comparisons to peer groups do not support dismissal because the fees in the comparison may not be the product of negotiations conducted at arm's length, and fact discovery is needed to resolve this issue. (*Id.* at 23-24)

The complaint in the case at bar alleges that the Board approves the IAC each year without independently assessing the advisory fees paid by the Funds, and Board members are generally part-time employees who oversee a number of other FEIM-managed mutual funds as well. (D.I. 1 at ¶¶ 93-95) The complaint indicates that the Board relies on information prepared by FEIM and does not consider information or analyses regarding the interests of the Funds or their shareholders. (*Id.* at ¶¶ 96-97) Moreover, the complaint asserts that the Board improperly failed to negotiate more favorable terms for the shareholders in the IAC, solicit proposals from other advisers, or require that the fee rates paid by each Fund be at least as favorable as the lowest rate other clients pay FEIM for substantially the same investment advisory services. (*Id.* at ¶¶ 99-101)

"As the statutory text indicates, Section 36(b) is sharply focused on the question of whether the fees themselves were excessive, and not on the status of the directors who approved them." *Migdal*, 248 F.3d at 328 (noting that other sections of the Act address the independence

of the funds' directors). Typically, "[a]llegations about the status of directors with whom fee negotiations took place relate too tangentially to the simple question of whether the investment advisers received excess compensation for the services they rendered." *Id.* at 329. For these reasons, the court should generally defer to the outcome of a board's negotiating process regarding investment-adviser compensation. *See Jones*, 559 U.S. at 351 (citing *Burks v. Lasker*, 441 U.S. 471, 484 (1979)). The court must not second-guess the Board's decision simply because the court might have weighed the relevant factors differently, as "the Act does not require courts to engage in a precise calculation of fees representative of arm's-length bargaining." *Id.* (internal citations omitted).

Although the complaint's allegations regarding the Board's fee approval process are insufficient, standing alone, to state a claim upon which relief can be granted, when viewed in conjunction with the other disputed *Gartenberg* factors, the allegations in the complaint are sufficient to withstand FEIM's motion to dismiss. *See In re Blackrock Mut. Funds Advisory Fee Litig.*, 2015 WL 1418848, at *8 (D.N.J. Mar. 27, 2015); *Gartenberg v. Merrill Lynch Asset Mgmt., Inc.*, 694 F.2d 923, 928 (2d Cir. 1982) ("[T]he test is essentially whether the fee schedule represents a charge within the range of what would have been negotiated at arm's-length in the light of all of the surrounding circumstances."). Some courts have recognized membership on the boards of several funds as a prevailing practice in the mutual fund industry, as opposed to a sign of the directors' lack of conscientiousness. *See Migdal*, 248 F.3d at 330 (citing *Olesh v. Dreyfus Corp.*, 1994 WL 780179 (E.D.N.Y. Aug. 15, 1994)). Moreover, allegations that the Board relied solely on information provided by FEIM do not wholly support plaintiffs' position, as the statute itself provides that "[i]t shall be the duty of the directors . . . to request and evaluate, and the duty of an investment adviser to such company to furnish, such information as

may reasonably be necessary to evaluate the terms of any contract whereby a person undertakes regularly to serve or act as investment adviser of such company." 15 U.S.C. § 80a-15(c). However, other courts have concluded that a complaint which pleads that the directors oversee numerous mutual funds, rely on information prepared solely by the defendant, and fail to consider information reflecting the interests of the funds or the shareholders, is sufficient to withstand a motion to dismiss. *See Goodman*, 2015 WL 965665, at *3-4; *see also Zehrer v. Harbor Capital Advisors, Inc.*, 2014 WL 6478054, at *2-3 (N.D. Ill. Nov. 18, 2014) ("Because a claim under § 36(b) need only meet the liberal pleading standards set forth in Rule 8, it is not necessary for a plaintiff to make a conclusive showing of each *Gartenberg* factor to survive a motion to dismiss.").

The complaint contains sufficiently specific factual allegations to meet Rule 8's liberal pleading standard at this stage of the proceedings. In view of the foregoing, I recommend that the court deny FEIM's motion to dismiss.

## V. CONCLUSION

For the foregoing reasons, I recommend that the court deny FEIM's motion to dismiss. (D.I. 15)

This Report and Recommendation is filed pursuant to 28 U.S.C. § 636(b)(1)(B), Fed. R. Civ. P. 72(b)(1), and D. Del. LR 72.1. The parties may serve and file specific written objections within fourteen (14) days after being served with a copy of this Report and Recommendation. Fed. R. Civ. P. 72(b)(2). The objections and responses to the objections are limited to ten (10) pages each. The failure of a party to object to legal conclusions may result in the loss of the right to de novo review in the District Court. *See Sincavage v. Barnhart*, 171 F. App'x 924, 925 n.1 (3d Cir. 2006); *Henderson v. Carlson*, 812 F.2d 874, 878-79 (3d Cir. 1987).

The parties are directed to the court's Standing Order For Objections Filed Under Fed. R. Civ. P. 72, dated October 9, 2013, a copy of which is available on the court's website, http://www.ded.uscourts.gov.

Dated: October 8, 2015

Sherry R. Fallon
United States Magistrate Judge